## Catharine A. Brown, Appellant, *v.* Milo Kistler and Alice C. Kistler.

*Waters—Water course—Defined channel—Riparian rights—Diversion of stream—Percolations.*

Water that is in the earth and finds its way through the soil by percolating or seeping, and has not a defined flow in a stream either under ground or above the ground, is absolutely the property of the man who owns the land in which that water is found; but where there is a defined stream, whether over or below the surface, the upper owner has no right unreasonably to divert the water to the injury of a lower owner.

An upper riparian owner has the right to use the water for household purposes and for watering stock, and also for manufacturing and other purposes, to an extent that is not unreasonable, bearing in mind the size of the stream.

Argued March 7, 1899. Appeal, No. 60, Jan. T., 1899, by plaintiff, from judgment of C. P. Monroe Co., Sept. T., 1895, No. 36, on verdict for defendants. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover damages for an alleged diversion of water. Before ALBRIGHT, P. J., of the 31st judicial district, specially presiding.

At the trial it appeared that a stream on the plaintiff's land had gone dry, and plaintiff alleged that this was caused by the defendants diverting water from certain springs on their land. The evidence for the defendants tended to show that the water taken by them had no defined channel either above or below ground, and had been gathered by them from mere percolations.

The court charged in part as follows:

The plaintiff here does not aver that the leading of the water from the springs or any of them by pipes was unlawful. The plaintiff conceded that the Kistlers or whoever occupied the premises had a right to a certain limited use of the water, but the plaintiff's allegation is that it was an unreasonable and unwarranted use under the circumstances, and therefore unlawful. The defendants aver that they didn't make an unreasonable and unlawful use of the water. You will bear in mind, gentlemen, that the only taking of the water in question was from the springs; there is no pipe from the creek or any of its branches. The defendants take the ground that even if they had used all the water from the springs, used it in any quantity, and for any purpose, that they would have had a right to do so because they say that it was simply taking underground water, and not water from a stream, either above or under the surface. Whether the latter assertion is true is perhaps the chief question of fact in this case, and in order that you may understand and decide it correctly, it is necessary that you should be informed as to the law bearing upon that question. [It is the law that water that is in the earth and finds its way through the soil by percolating

or seeping, and has not a defined flow in a stream either underground or above the ground is absolutely the property of the man who owns the land in which that water is found; he has the same right to it as he has to anything else in the ground. But where there is a defined stream, whether on or below the surface, a flow of water that is visible, a channel as it has been called in this case, a gutter in which it flows, and it passes through the lands of one to the lands of another below him, there the rule is different; and if there is a well defined flow in the channel or stream under ground so that it is not the mere percolating of water through the earth, but a well defined flow, and it flows from the land of one above to the lands of another, where there is such a flow in a channel from the lands of one to the lands of another, there the owners of the land through which it flows have the right to use the water, within certain bounds which will be stated to you.] [1] I have stated to you that there is no allegation that the Kistlers took water out of the creek, out of the stream that comes from above. The question is as to the three springs. Two of them are on the ridge about fifty feet apart, the one farthest north is the main and large spring, and has been called the Bisbing spring; the other one is near it, and the third spring is to the west and across the creek that runs there. [As to the second spring, the one that is about fifty feet from the Bisbing spring, I say to you that there is no evidence in this case from which you could find that the water flowed from it in a channel to the creek at any time. The testimony is that in 1878 Stephen Kistler found a wet spot here and that he dug it up, thus developing water which he made use of, but you could not find that the water from that spring flowed in a stream either above or under ground. As to the taking of that water by the Kistlers, even if they used it all, the plaintiff could not complain, because it was not water from a stream.] [2] [As to the spring on the west of the creek, I am of the opinion that the same thing must be said. It is not proved that the water flowed from that spring in a stream into the creek. You are told that it is about twelve feet from the creek. The only evidence as to the flow that I recollect is that of Mr. Bisbing, who said that in the olden time when he was a boy or a young man, he went to that spring and drank. When he was asked whether it flowed into the creek he said he thought

it did. I remember nothing else on the point that is stronger than that, and that would not warrant you to find that there was a channel or gutter in which the water flowed. It may have flowed into the creek, but not in the shape of a channel or stream; it may have seeped down to the creek.] [3] Now, gentlemen, the defendants, Mr. Kistler and his wife, didn't lay these pipes, they didn't divert the water; the person who owned the land before them did that, but the rights of Mrs. Brown are the same at the time here in question, as though Stephen Kistler had still been the owner of the premises that the defendants now own. The rights of the defendants are no stronger than those of Stephen Kistler. There is such a thing as acquiring a right to a thing of this sort by prescription or by what is commonly called limitation. Where for twenty-one years the owners of land, without interruption, without dispute, use a thing as this water was used, a right thereto is acquired, but there is no twenty-one years' use proved here. You observe, from 1878, the time of the taking of the water, down to the time here in question, there is not twenty-one years; so if Stephen Kistler's diversion of the water originally was unlawful, and the defendants were notified by Mrs. Brown before this action was brought to let the water run, they are liable if they kept back more water than they had a right to. If they unlawfully kept it back then it was a continuance of an unlawful act for which the party in a question of this sort is liable; and so I say to you that if the plaintiff has proved that she was entitled to the flow of water over her premises after she became the owner of the land, before this suit was brought, and which she was deprived of by the holding back and turning off of the water, then the plaintiff may recover; and while my mind is on this subject I will instruct you as to the measure of damages, if you find for the plaintiff. If the plaintiff has not made out a case, if she has not shown that she had a right to something that she was deprived of, then your verdict will be for the defendant. Where a person's right is injured as is alleged to be the case here, if it is proved that Mrs. Brown was deprived of water by the defendants unlawfully, there the plaintiff is entitled to recover at least a nominal sum; in such a case the jury awards a small sum, say six cents or $1.00. In addition to that, if it has been proved that she suffered loss by reason of this unlaw-

ful deprivation of the water then you can add to this nominal sum such a sum as will compensate her for what she has lost. She and certain other witnesses or a witness have said that her damage was $100; they didn't specify items. You wouldn't be bound to accept that sum. If she has not satisfied you what her loss would be, in such a way that you, without guessing, could put a figure upon it, you would find in her favor nominal damages, six cents or $1.00. In actions of this sort there is sometimes a further kind of damages, punitive damages. In an action of this sort, where it appears that the defendant has acted in a high handed way, that his actions were attended by circumstances of outrage, the jury may add to the damages a further sum to punish the defendant for his unlawful acts. In this case I say to you that there can be no punitive damages; the facts do not warrant it. There was some sharp talk by Kistler when notice was served upon him. when he and Mr. Brown disputed about this water right, but we must bear in mind that this water had been diverted long before Mr. Kistler and his wife became the owners of the premises. If the plaintiff is entitled to recover she is entitled to nominal or compensatory damages, but nothing further in the way of punishment. You must not regard the question as trifling because you may think that the injury proved is not serious, for your verdict settles the right. The consequences of your verdict are most serious to the parties. If you find in favor of the defendants the effect of your decision is that up to the time this action was brought, during the time complained of, the defendants had taken no more than they had a right to take; that would settle for all time that the Kistlers have a right to take water as they took it before this suit was brought. While if you find in favor of the plaintiff, if it is only for six cents, it is a decision which will stand for all time, and is in effect that the Kistlers took more water than they had a right to take, and that they must suffer more water to go down to Mrs. Brown's property. The consequences are serious and we urge upon you to carefully consider all the facts in the case and the law as the court declares it. As to this matter of water in the earth percolating and flowing in a defined stream, I will call your attention to certain authorities, and make certain statements of the law to you. The right of landowners to deal with all water

mixed with the soil, in any manner they may deem necessary for the improvement or better enjoyment of their land, is unquestionable ; and if by so doing in good faith, they necessarily do damage to their neighbors' land it must be regarded as no infringement, and no damages are recoverable. Water that sinks through the top soil and struggles through it following no defined channel, is deemed by law to belong absolutely to the owner of the land upon which it is found, for the purpose of enabling him to cultivate his land by draining it off in the mode most convenient to him. The owner of swamp land in which water collects may do what he pleases with the water, provided he does not throw it upon the land of an adjacent owner, to the injury of such land. Nor could the owner of such adjacent land have legal ground of complaint, though the owner of the swamp were to prevent the water from percolating into such adjacent owner's land, although such water benefited it. It may be stated as a general principle of nearly universal application that one proprietor of land may not stop or divert the waters of a stream flowing in a surface channel through it, so as to deprive a landowner whose estate lies upon the stream below that of the proprietor first mentioned, of the use of the same, nor essentially impair or diminish it. If, without an intention to injure an adjacent owner, and while making use of his own land to any suitable and lawful purpose, he cuts off, diverts, or destroys the use of an underground spring or body of water which has no known and defined course, but has been accustomed to penetrate and flow into the land of his neighbor, he is not thereby made liable to any action for the diversion or stoppage of such water. The owner of the soil may drain boggy or swampy places in which water formerly stood at his pleasure, and it makes no difference that there must have been underground courses allowing such water to flow to a stream, such owner has a right to divert it before it has formed itself into a natural channel. He must not take the water after it has formed or reached a surface stream, except that he may use it in a reasonable manner as will be stated hereafter. Every person through whose land a natural stream of water runs has the right to the benefit of it as it passes through his land ; he has a right to obstruct it in passing over his lands. Each proprietor may make

any reasonable use of the water upon his premises, he may diminish the quantity, but the use must be a reasonable one.

In this trial, you have heard the term riparian owners used; by that is meant the owner of land through or along which a stream flows. Each riparian owner has a right to the use of the water. The upper riparian owner may diminish it, and where the stream is very small, even sensibly diminish it to the detriment of those below, if the reasonable use of the water of such upper owner requires it. What is a reasonable use of the water depends upon the circumstance of each case, and is a question for the jury; the character of the stream, the purpose to which water is applied, and the manner of application are important considerations in determining this question.

Now, the first question that you have to consider is, has the plaintiff proved that the taking of the water by the defendants from this main spring, called the Bisbing spring, was unlawful; [if it is not proved by the plaintiff that the water from that spring flowed in a channel or gutter that was visible, could be seen, that it flowed in a certain course, then the plaintiff has no case, because then it was a case of collecting water that was in the ground, or that flowed underground by mere percolating or seeping. Because nobody has shown that it flowed in a channel underground. Under the authorities I have stated to you, the Kistlers in that case, if there was no channel, had a right to it.] [4] On that point the plaintiff claims that it is proved that the water flowed in a channel from that spring, the Bisbing spring, that is, before Stephen Kistler put the pipe in, and the defendant just as strongly asserts that that is not proved. All the parties agree that there was a marsh there around the spring. I believe there is a marsh there now. It appears that in 1878 a spring was dug up; it is said that there was a small hole with water in it before, and that Stephen Kistler dug it up, put the spring house over it, made a receptacle something like ten by twelve feet by twenty inches deep, also put a house over the second spring. [Now, gentlemen, if before Stephen Kistler dug up and put that spring in its present shape in 1878 there was a mere marsh there, and water from the spring sunk into the ground, made a marsh around and nothing more, then sunk in the earth and found its way to some lower level somewhere by mere percolating, then, I repeat, the plaintiff has no cause

of action.] [5] The burden is on the plaintiff to show that there was a stream, because the lower owner can only complain for the diversion of water from the stream. The stream of course may be a large or a small stream.

It appears that 100 feet or so in one direction from that spring the marsh extends, and there it ceases, and there is dry ground; witnesses have called it a knoll. I understand it to be a ridge of dry ground. The defendant's argument is that that created a marsh there in which the water stood, and that there was no semblance of a stream there. The plaintiff alleges that you should find that that higher or dry ground didn't extend all around, and it didn't prevent the water from running out, and that at one place the water used to run out, and that there was a stream. The plaintiff alleges that you can find from the testimony of one or more of the witnesses positive evidence that there was a stream there; that the water flowed and you could see it. It is alleged that you can find from the quantity of water and the lay of the land that it probably had a defined flow, and on the other hand it is insisted that a number of witnesses who knew this place many years ago, before 1878, who also had means of observing it, say there was no gutter there conducting water from the spring; others say that they saw none. The defendants say that the great weight of the evidence is in their favor; that most of the witnesses who knew this place either say there was no channel there or that they saw none. On the other hand it is alleged that the testimony of those witnesses who positively say that there was a gutter with flowing water is much more valuable than that of a number of witnesses who testify that they didn't see it. Well the courts always hold this, that where one witness says that he did see or hear a certain thing, and another witness or witnesses say that they didn't see or hear the same thing, the testimony of the one who asserts positively that he did see or hear is much more important than that of those who say that they didn't see or hear; I say to you that is true. The credibility of the witness is for the jury. If several witnesses had said that they had looked for a gutter, and one would say that he saw it, and one would say that he didn't find one there, both their statements would be in the nature of positive evidence. Well, gentlemen, we will leave that feature of the case with this remark, that

you are to consider what the testimony of the different witnesses
is worth, and then you will consider whether the weight of the
evidence is with the plaintiff, [because the plaintiff must make
out this matter of a defined channel from the Bisbing spring, or
she has no cause of action. The burden is on her to prove that.
If, considering all you find from the weight of the evidence,
the existence of such a defined channel is not proved, then you
will find for the defendants, because the Kistlers then had a
right to take all the water.] [6] On the other hand, if you
find that the existence of such a defined channel is proved, then
you will inquire further as to whether the Kistlers during the
time in question, from November 22, 1893, when Mrs. Brown
became the owner of the land, down to the time this suit was
brought, September 5, 1895, took more water than they had a
right to take. The manner in which the water was used dur-
ing that period has been detailed to you, and you have been
instructed that the owners of land situated as the Kistlers were,
had a right to the reasonable use of the water. [Such upper
owner has the right to use the water for household purposes
and for watering stock, and also for manufacturing and other
purposes, to an extent that is not unreasonable, bearing in mind
the size of the stream.] [7]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* among others were (1–7) above instructions,
quoting them.

*Charles B. Staples*, with him *Wilton A. Erdman*, for appel-
lant.—Where a spring depends for its supply upon percolations
through the land of the owner above, and in the use of the land
for mining or other lawful purposes the spring is destroyed, such
owner is not liable for the damages thus done, unless the injury
was occasioned by malice or negligence : Wheatley v. Baugh,
25 Pa. 528.

In the present case, if the waters from the spring flowed into
the stream running by the plaintiff's house, and she and the
former owners of the same land had appropriated its waters, it
is immaterial how the water reached her land, whether through
percolation, or by direct channels ; the gravamen of the action
was the diversion of the water of the living springs for unlaw-

ful purposes by the defendants: Craig v. Shippensburg Borough, 7 Pa. Superior Ct. 526; Cross v. Kitts, 69 Cal. 217 Swett v. Cutts, 50 N. H. 439; Wheatley v. Baugh, 25 Pa. 528; Collins v. Chartiers Gas Co., 131 Pa. 143; Miller v. Miller, 9 Pa. 74; Clark v. Penna. R. Co., 145 Pa. 438; R. R. Co. v. Water Co., 182 Pa. 418; Rudolph v. Penna. R. Co., 186 Pa. 551.

*R. L. Burnett,* with him *Cicero Gearhart,* for appellees.—To entitle a stream to the consideration of the law, it is necessary that it be a water course in the proper sense of the term. A spring gutter on the surface is none the less a water course, although it is not equal in volume to a river. Small as it may be, if it have a clear and well defined channel, and a regular flow in the channel, it cannot be diverted to the injury of the proprietors below. When the filtrations are gathered into sufficient volume to have an appreciable value, and to flow in a clearly defined channel, it is generally possible to see it, and to avoid diverting it without serious detriment to the owners of the land through which it flows. But percolations spread in every direction through the earth, and it is impossible to avoid disturbing them without relinquishing the necessary enjoyment of the land. Accordingly the law has never gone so far as to recognize in one man a right to convert another's farm to his own use for the purposes of a filter: Wheatley v. Baugh, 25 Pa. 528; Acton v. Blundell, 12 M. & W. 324; Haldeman v. Bruckhart, 45 Pa. 514; Lybe's App., 106 Pa. 634; Plank Road Co. v. Braden, 172 Pa. 465; Frazier v. Brown, 12 Ohio, 294; Ballard v. Tomlinson, L. R. 29 Ch. Div. 125; Collins v. Chartiers Gas. Co., 131 Pa. 143; Metcalf v. Nelson, 65 N. W. Rep. 911; Washburn's Easements & Servitudes, 310; Roath v. Driscoll, 20 Conn. 533; Angell on Water Courses, sec. 4, p. 6.

PER CURIAM, March 27, 1899:

The questions at issue in this case were essentially questions of fact. They were very carefully submitted to the jury and determined by the verdict. We think the learned court below kept within the limits of the decisions in defining the rights of owners as to percolating or seeping water, and charged the jury correctly as to the right of the owner to divert the water by

reasonable use of the same, even if by such use a lower owner might be somewhat injured. The jury found under the charge that there was no unreasonable diversion of the water in this respect.

Judgment affirmed.