Hay, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This is a suit brought by the plaintiffs to recover $50,000 which they allege to be the value of certain water rights owned by them and which have been taken and appropriated by the defendants, the United States.
The plaintiffs and their grantors since the year 1880 have been the owners in fee simple of 640 acres of land situate in Meade County, South Dakota. These lands consist of two separate tracts of 320 acres each; the western, or upper tract, known as the Cusick place, is pasture land; the eastern, or lower tract, known as the home place, is agricultural land, *66 of which 130 acres has been in cultivation for a considerable length of time. About 220 acres of this tract is susceptible of improvement and can be used for agricultural purposes, but that, with the residue of the home place, has been used for grazing purposes. Seventy-five acres of this tract has been irrigated. Lying between the two 320-acre tracts are 160 acres of State school land. All of the land of the plaintiffs is riparian to the waters of the Deadman Stream.
The predecessors in interest of the plaintiffs in this land in the year 1882 located a water-right location entitling them to the use of 100 miner’s inches of the waters of Deadman Stream. Said location is on the tract of land of the plaintiffs known as the Cusick place, the upper tract of land of the plaintiffs, situated on said stream above the home-place tract. By means of a dam, flumes, and ditches constructed on the Cusick place the plaintiffs for a number of years diverted sufficient water from Deadman Stream to irrigate 75 acres of land on the home place, and could have, by a reasonable use of said water, irrigated 130 acres of said home place. The plaintiffs also used the water so diverted to water in the dry season the stock on the home place. Since the year 1900 the plaintiffs have not used the water in Deadman Stream for purposes of irrigation by diverting the same by means of their dam, but the plaintiffs have not abandoned their water right. On the contrary, during the time since 1900 the plaintiffs have asserted their right to the use of their water-right location and to the use of the water in said stream. The 320-acre tract, known as the Cusick place, is pasture land and was made valuable for that purpose from the fact that Dead-man Stream flowed above the ground through said tract all the year round, and from the further fact that said tract is in close proximity to Sturgis, a town of 1,700 inhabitants.
The defendants are now and have been since 1908 the owners in fee simple of a large forest reserve which adjoins the Cusick place of the plaintiffs on the south. This portion of the forest reserve is riparian to the waters of Deadman Stream, and is above the lands of the plaintiffs on said stream. The defendants also own in fee simple the Fort Meade Military Eeservation, the land of which is not ri- *67 parían to tbo waters of said stream. Prior to 1908 and continuously since that time the defendants have maintained upon said reservation troops of the United States on an average, daily, of 300 men and 300 horses and mules.
Deadman Stream is a nonnavigable stream rising in the Black Hills of South Dakota, which flows from its source in a natural bed across the 320-acre tract of the plaintiffs, known as the Cusick place, flowing above ground through this tract all the. year round; and flows above ground through the home place for about eight months in the year. In the year 1909 the defendants began the construction of dams across Deadman Stream on their land in the forest reserve above the lands of the plaintiffs. These dams were completed on February 4, 1910.
These dams obstruct and hinder the flow of the waters of this stream and divert and detain the waters of Deadman Stream from the lands and water-right location of the plaintiffs, and deprive them of the use of all of said water, for by means of an 8-inch pipe line connected with the intake dam of the defendants they have diverted this water and conveyed it away from the lands of the plaintiffs to their military reservation. The water is then used for domestic purposes, for watering live stock, for sprinkling lawns, for sewage purposes, and the surplus water so taken from Dead-man Stream is emptied into Bear Butte Creek, which stream is below the lands of the plaintiffs. Since the taking of this water from this stream by the defendants there has been no water flowing in this stream, except in times of freshets, through and upon the lands of the plaintiffs, so that the plaintiffs have been wholly deprived of the use of this water, which has made their Cusick place of no value for purposes of pasture, and has prevented them from irrigating any part of their home place and from pasturing cattle on said place. It does not appear from the evidence that the defendants complied with the statutes of South Dakota, which provide for the appropriation and utilization of the waters of a nonnavigable stream. The defendants did give notice of their intention to appropriate the waters of Deadman Stream *68 to the State engineer of South Dakota, but tins was not a sufficient compliance with the statutes of the State as construed by its courts.
In South Dakota a dual system prevails as to water rights, to wit, riparian rights and the doctrine of appropriation. (Sec. 278, Civil Code, Revised Codes, S. Dak.)
The right of the defendants to take and appropriate the waters of the nonnavigable streams of the State of South Dakota must be determined by the laws of that State and by the decisions of its courts in construing those laws. United States v. Rio Grande Dam & I. Co., 174 U. S., 690; Kansas v. Colorado, 206 U. S., 46; Wiel on Water Rights, sec. 207, p. 240. A statute providing that a notice to a State engineer for the appropriation of water and the location of a water right is sufficient to take from a riparian owner his vested rights in the use of the waters to which his land is riparian is void. The right to the use of such waters can not be confiscated or interfered with by the State or the public and placed in the custody and control of a State engineer any more than could the land itself upon which said water happened to be. St. Germain Irrigating Ditch Co. v. Hawthorne Ditch Co., 32 S. Dak., 260, 267. The defendants having appropriated the water in Deadman Stream under a notice given solely to the State engineer, and having failed to comply with the statutes of South Dakota requiring publication of notice of the application to appropriate water, can not claim any rights as an appropriator of water under the statutes. The question therefore arises whether the plaintiffs occupied the position of prior appropriators as between them and the defendants when the latter undertook to divert the waters of this stream from the lands of the plaintiffs. At that time th.e plaintiffs had been in possession of their lands for over 28 years, and their water right had been located for 26 years.
The fads in this case are that the predecessors in interest of the plaintiffs located a water right in conformity with law on Deadman Stream on their land known as the Cusick place, riparian to the wafers of that stream, and used the same by the construction of a dam, flumes, and ditches, by *69 which they conveyed these waters to their home place for the purposes of irrigation, and also for domestic purposes and the watering of live stock. If the plaintiffs did not by the use of the water interfere with the rights of other riparian owners, and did not take from the stream an unreasonable amount of water, then their right to the use of the water so appropriated by them can not be questioned; and if the defendants, as it appears they have, by the construction of a dam or dams, above the water-right location of the plaintiffs, diverted all of the waters from the lands of the plaintiffs, and thus rendered useless their water right, then the defendants have taken from the plaintiffs the usq of the wafer to which the plaintiffs were entitled, and the plaintiffs are entitled to recover the value of the use of the water of which they have been deprived. Not only have the defendants taken from the plaintiffs the use of their water-right location but they have deprived them .of the use of the water which flowed past the Cusick place, and thus rendered valueless that tract of land for pasturage purposes. For this taking the defendants are liable to the extent of the value of the use of the waters of which the plaintiffs have been deprived.
The defendants, however, claim that by reason of nonuse the plaintiffs have abandoned their water-right location, and that in consequence of such abandonment the plaintiffs are only entitled to such use of the waters of this stream as any other riparian owner would have. It appears from the evidence in this case that the water right of the plaintiffs was located in the year 1882 and was in use until the year 1900; that since the year 1900 the plaintiffs asserted their right to their water-right location and testified that they had no intention of abandoning it. For several years after 1900 the rainfall was abundant enough to enable them to grow their crops without ii'rigation, and after that they used their home place for stock-raising purposes down to the year 1909. Under these circumstances can it be said that the plaintiffs had abandoned their water-right location when the defendants began the construction of their dams in 1909 and diverted the water from the plaintiffs’ lands ? “ To constitute abandonment, properly speaking, there must be a concur *70 rence of act and intent, the relinquishment of possession, and the intent not to resume it for a beneficial use, so that abandonment is always voluntary and a question of fact.” Wiel on Water Rights, sec. 567.
The declarations of the party abandoning as to his intention are evidence, and he may himself testify as to what his intention was, since his intention is in issue. The party claiming the abandonment has the burden of proof, which must be clear and definite to a preponderance of evidence. Wiel, sec. 567.
“ Nor will the nonuser alone without an intention to abandon be held to amount to an abandonment.” Wiel, sec. 569, quoting from Utt v. Frey, 106 Cal., 397.
“ It is well settled that lapse of time does not itself constitute an abandonment and that it is only a circumstance for the jury to consider in determining whether there has been an abandonment. In other words, the question is one of intent.” Wiel, same section, quoting from Valcalda et al. v. Silver Peak Mines, 86 Fed., 90.
In North American Exploration Co. v. Adams, 104 Fed., 409, the learned judge who delivered the opinion of the court in discussing the question of abandonment of water rights said, after discussing other evidence, “ that they testify that they never intended to abandon their water right; and the very persuasive consideration is that the voluntary renunciation of valuable rights of property is contrary to the ordinary course of human action.” The evidence of abandonment in this case is not clear, and is not established by the testimony. It is not denied that a riparian proprietor of land bordering upon a stream is entitled to the benefit to be derived from the flow of its waters as a natural incident to his estate, and that as between themselves riparian owners are entitled to a just and reasonable use of the waters of the stream.
Apart from the rights of the plaintiffs as appropriators, can the defendants, regarding the plaintiffs as riparian owners only, divert the waters of this stream away from the lands of the plaintiffs and use all of said waters at their mili *71 tary reservation? The defendants maintain on their military reservation 300 men, and 300 horses and mules; they use the water taken by them from Deadman Stream for domestic purposes in the way of supplying the wants of the men and the families of officers and men who are stationed at this post; for watering the horses and mules; for sprinkling lawns; for sewage purposes; and when a surplus of water accumulates in their reservoir, as it frequently does, they flow it into Bear Butte Creek, a stream below the lands of the plaintiffs, so that the water can not return to their lands. Such a use of these waters is not a reasonable use.
In a late Washington case it Avas held: ‘‘Each riparian owner is entitled to a reasonable use of the waters as an incident to his ownership, and all owners upon the same stream have the same right of reasonable use, the use of each must be consistent with the rights of others, and the right of each is qualified by the rights of others.” Wiel on Water Rights, sec. 745. The use must be a just and reasonable use and must be exercised with due regard to the rights of others. Reasonable use is the touchstone for determining the rights of riparian owners among themselves. Wiel, sec. 745, citing 10 Cush., 193; 54 Me., 487; 190 Pa., 499.
A riparian owner has no right to intercept the regular flow of the stream if he thereby interferes with the lawful use of the water by other proprietors and inflicts upon them a sensible injury; nor has he the right to use the water in a stream to the prejudice of another; nor can he be permitted so to use the stream as to injure or annoy those who are situated on the course of it, either above or below him. Angell on Watercourses, p. 96 et seq., and cases there cited.
Mr. Justice Field, in delivering the opinion of the Supreme Court of the United States in Atchison v. Petersen, 20 Wall., 511, quotes with approval Mr. Justice Story in Tyler v. Wilkinson, 4 Mason, 379:
“ It is wholly immaterial whether the party be a proprietor above or below on the course of the river; the right being common to all the proprietors on the river, no one has a right to diminish the quantity which will, according to the natural *72 current,flow to the proprietor below or to throw it back upon a proprietor above. This is the necessary result of the perfect equality of right among all the proprietors of that which is common to all.’'
The defendants in using the water from Deadman Stream have taken all of it. Their use of it is not only extensive, but exhaustive. It is not a reasonable use, but one which deprives the plaintiffs entirely of their right to the use of the waters of Deadman Stream.
This is a taking of private property within the meaning of the fifth amendment of the Constitution. Here the defendants, the United States, have taken from the plaintiffs for public use their right to use the water in this stream without making any compensation. Pumpelly v. Green Bay Co., 13 Wall., 166; Monongahela Navigation Co. v. United States, 148 U. S., 312, 337.
It follows from the foregoing that the plaintiffs should have a judgment in the sum of $19,000, and it is so ordered.
Bowhey, Judge, Barney, Judge, Booth, Judge, and Campbell, Chief Justice, concur.